OPINION OF THE COURT
Michael J. Miller, J.
The Monroe County Department of Social Services petitioned this court for a 12-month extension of placement for *804 Yolanda and Valencia S. pursuant to section 1055 of the Family Court Act. The children were originally placed in the care and custody of the Department of Social Services for 18 months by order of disposition dated April 19, 1989, after a finding of neglect against the mother.
Respondent mother was notified of the extension petition and appeared in court with counsel. Respondent did not object to the extension for Yolanda, the oldest daughter, nor to her remaining in foster care. She also consented to the extension of placement for the younger daughter, Valencia. However, she vigorously and adamantly protested the continued placement of Valencia by the Department of Social Services in the Gordon foster home. She demanded that Valencia be placed in another foster home and insisted that continued placement of her daughter in the Gordon home was not in the child’s best interest. Respondent through counsel urged the court to consider the strong public policy of this State to seek the eventual reunification of families and therefore argued strenuously that a mother has a right and an obligation to participate in the planning for her child even though consenting to an extension of placement.
The Department of Social Services, through its counsel, contended that respondent mother had no standing to contest its specific placement plan for Valencia. It maintained that the mother’s rights under section 1055 of the Family Court Act were limited to the question of extension of placement and that a consent to extension could not be accompanied by an objection to the placement of the child in a specific foster home. Such an objection, counsel argued, would be an infringement on the authority and discretion given to the Department of Social Services.
Thus, we have a collision of two strongly held views.
This case involves a question of law which the courts have not previously addressed. Therefore, the likelihood exists that any ruling may be appealed. Thus, the court, in the exercise of its discretion, reserved decision on this issue and proceeded to a fact-finding hearing.
At the hearing respondent maintained that the Gordon foster home was having a detrimental effect on her child. She attempted to show that Valencia’s grades in school had declined, that she often saw her daughter out on the streets at unreasonable hours and on those occasions that Valencia was with "unsuitable” male companions.
*805 The Department presented proof that the Gordon home was a certified foster home. Mrs. Gordon testified that although it was true that Valencia had violated curfew on many occasions, she was disciplined by confinement to the home for extended periods of time (a practice commonly referred to as "grounding”), and loss of telephone privileges. She further related that she attended conferences at Valencia’s school, spoke with the teachers and had at their suggestion put aside structured study time for Valencia after school. In fact school records introduced by the Department demonstrated that although Valencia’s grades had initially declined, they had recently begun to improve.
The court therefore finds based on the credible testimony, the in camera interview with the child and the Law Guardian’s recommendation, that the Gordon home is a suitable and proper foster home for Valencia. Although the respondent mother’s concern for the child is commendable, her insistence that the foster mother be in effect a 24-hour-a-day warden is neither appropriate, feasible nor necessary.
On the specific issue of law, the court holds that the Department’s motion to restrain respondent from contesting the suitability of the foster home should have been granted and that no fact-finding hearing was necessary. The respondent having consented to the extension of placement, under section 1055 of the Family Court Act, had no standing to interfere with the Department’s discretion and authority in this regard.
Admittedly there are no legislative guidelines for this decision and a review of case law presents nothing directly on point.
However, in Matter of Damon A. (61 NY2d 77), the Court of Appeals held that when transfer of a child to the Commissioner of Social Services is approved under section 358-a of the Social Services Law, responsibility for the child’s best interests vests in the agency. Therefore, an order of the court demanding progress reports was invalid. Similarly in Matter of James B. (96 AD2d 730), the court held that an order to keep siblings together in foster care was improper as it interfered with the discretion vested in the Department as an authorized agency. Thus the courts have indicated that a boundary exists in this area over which judicial authority cannot infringe on administrative discretion.
Most importantly, the case of Matter of Commissioner of Social Servs. [Riddle] v Rapp (127 Misc 2d 835 [Fam Ct, *806 Queens County 1985]) delineated the limit of certain family members (great aunt and uncle) and the foster parents themselves to protest a placement of a child under section 1055 of the Family Court Act. There, Judge Gallet, in a carefully crafted and thoroughly researched opinion, held that it was solely within the discretion of the Commissioner to determine the proper residence of a child placed in its care and custody pursuant to a section 1055 neglect proceeding. Thus, neither the great aunt and uncle nor the foster parents had the authority to challenge the decision of the Commissioner.
Reasoning from these precedents, this court now holds that a parent who has consented to the extension of placement in a section 1055 proceeding has no right to contest the specific placement of the child by the Department of Social Services. No matter how well-intentioned or well-meaning the parent is, he or she may not interfere with the Department’s area of responsibility once a consent to extension is given. The rights of the parent under this particular set of facts must yield to the authority and discretion of the Department of Social Services when the care and custody of the child have been committed to it. It is then up to the Department, not the parent, to protect the best interests of the child and particularly to decide on specific placement and residence.